**UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **JOHN DAVID RAPLEE, JR.** | : |
| **108 South College Avenue** | : |
| **Montour Falls, NY 14865** | : |
| | : |
|        **Plaintiff** | : |
| | : |
|    **v.** | : **Civil Action No: 13-1318** |
| | : |
| **UNITED STATES OF AMERICA** | : |
| **National Institutes of Health** | : |
| **9000 Rockville Pike** | : |
| **Bethesda, MD 20892** | : |
| | : |
| **Serve:  The Honorable Rod J. Rosenstein** | : |
|         **United States Attorney's Office** | : |
|         **District of Maryland** | : |
|         **36 S. Charles Street, 4th Floor** | : |
|         **Baltimore, MD 21201** | : |
| | : |
|         **The Honorable Eric Holder** | : |
|         **United States Dept. Of Justice** | : |
|         **950 Pennsylvania Avenue, NW** | : |
|         **Washington, DC 20530-0001** | : |
| | : |
|        **Defendant** | : |

**COMPLAINT**

**JURISDICTION**

1.    The claims herein are brought against the United States of America (hereinafter

also referred to as "United States" and "USA"), and this Court has jurisdiction, pursuant to

the Federal Tort Claims Act (28 U.S.C. §2671, *et seq*)., 28 U.S.C. §1331 and 28 U.S.C.

§1346(b)(1) for monetary damages as compensation for personal injuries that were caused

by negligent and wrongful acts and omissions of agents, apparent agents, servants and/or employees of the United States of America while acting within the scope of their agency, apparent agency, and/or employment, under circumstances where the United States of America, if a private person, would be liable to the plaintiff in accordance with applicable state law.

2.      Plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act.

3.      Plaintiff served his administrative claim on the United States Of America on September 17, 2008 through the United States Department Of Health And Human Services, Office of the General Counsel.

4.      The United States of America has not responded nor rendered a decision on Plaintiff's claims.  Over six months have elapsed and all conditions precedent to an Federal Torts Claim Act complaint have been met.

5.      Plaintiff has fully complied with the provisions of Maryland Code Ann. Courts and Judicial Proceedings, §3-2A-06(B).

6.      Plaintiff filed his claim for the claim set forth below with the Health Care Alternative Dispute Resolution Office, State of Maryland, on November 8, 2012.

7.      Plaintiff filed his Certificate Of Merit and his expert's narrative report with the Health Care Alternative Dispute Resolution Office on February 1, 2013.

8.     Plaintiff waived arbitration with the Health Care Alternative Dispute Resolution Office , State of Maryland, on March 4, 2013.

9.     Venue is proper in this court pursuant to the provision of 28 U.S.C. §1402(b) as the acts complained of occurred in the State of Maryland and within this court's district.

## PARTIES

10.     Plaintiff, JOHN DAVID RAPLEE, Jr., (hereinafter also referred to as "Mr. Raplee") was at all times relevant hereto, a resident of Montour Falls, N.Y.

11.     The United States of America is the appropriate defendant under the Federal Tort Claims Act.

## FACTS

12.     The claims herein are brought against the United States pursuant to the Federal Tort Claims Act (28USC §2671, *et seq.*) for money damages as compensation for personal injuries that were caused by the negligence and wrongful acts and omissions of employees of the United States of America, including the National Institutes of Health and its agents, apparent agents, servants and/or employees, while acting within the scope of that agency, apparent agency, and/or employment, under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with applicable state law.

13.     The National Institutes of Health, (hereinafter also referred to as "NIH") was, at all times relevant hereto, a medical facility licensed to practice medicine in the State of Maryland, and as such, held itself out to the public as a facility well skilled in the practice

of medicine, including surgery, and derived substantial revenue from the practice of medicine in Montgomery County, Maryland.

14.    On September 13, 2006, John Raplee Jr., then 22 years old, was admitted to NIH to undergo pre-surgical evaluation for an eventual parathyroidectomy. He had a history of multiple endocrine neoplasia (MEN) Type I and Zollinger-Ellison Syndromes. Manifestations of MEN Type I included hyperparathyroidism diagnosed with increased prolactin levels and pituitary macroadenoma. His Zollinger-Ellison syndrome was well controlled with medication.

15.    Mr. Raplee's parathyroidectomy was scheduled for September 18, 2006. His admission assessment notes that he had no difficulty ambulating, and that he is not in any current pain and is not being treated with any pain medication. He denied having any numbness, tingling or cramps in his extremities.

16.    On September 18, 2006, Mr. Raplee underwent a cervical exploration, subtotal parathyroidectomy (3 ½ glands) with bilateral transcervical thymectomy. The pre-surgical care note stated that his position was "supine; bean bag folded under shoulders, arms padded with foam and secured with sleds; pillow under knees; heels padded with foam." His legs were immobilized with his feet strapped down at the ankles.

17.    The surgery began at 0855 hours and ended at 1345 hours, although his time in the OR was from 0800 hours to 1410 hours. The operative note states the Mr. Raplee tolerated the procedure well. At 1539 hours, he was returned to the unit by stretcher.

18.    A nurse's note at 1540 hours reported that Mr. Raplee was complaining of numbness in his feet.

19.    At 1700 hours a care conference was called because Mr. Raplee was complaining of swelling and pain to the left ankle and numbness to all right toes and tingling to all fingers of his right hand.  Mr. Raplee was monitored for signs and symptoms of hypocalcemia.

20.    Mr. Raplee was given anti-embolism stockings bilaterally from toes to thighs. On inspection, his skin color was normal and skin temperature was warm.  He had limited range of motion and still reported numbness.  Stockings were later removed because he complained that they were too tight.  At 2039 hours he still had symptoms of numbness, which persisted at the distal 1/3 of both feet.

21.    On September 19, 2006 at 0014 hours Mr. Raplee was awake and complaining of pain in both legs and feet.  They are described as large with 2-3+ ankle edema.  At 0330 hours it was decided to move Mr. Raplee to ICU for continued monitoring.  His ankles still had 2-3 edema, non pitting.  He continued to complain of leg and ankle pain and was medicated for that.  At 0400 hours he was moved to the ICU with severe lower leg and ankle pain.

22.    Over the next ten days until his discharge on September 29, 2006, Mr. Raplee had numerous consults with physicians from various specialties.  His left foot and ankle pain was 10/10 on many occasions throughout this time, associated with pins and needles

sensation over the ball of his left foot.  He was unable to move his left foot in eversion and
inversion as well as plantar flexion and unable to tolerate weight bearing on his left lower
extremity.

23.     On repeated exams he was in moderate distress secondary to severe pain.  His
left lower extremity was swollen with skin discoloration.  Warmth was noted throughout the
left distal lower extremity and tenderness over the lower one-third of the leg.  Active assisted
range of motion of the left ankle dorsiflexion was 0 degrees.

24.     The discharge summary notes that his pain was thought to be due to
rhabdomyolysis and evidence of an acute injury to the deep peroneal nerve which developed
immediately post-operatively.

25.     In addition, given his findings of muscle and nerve injury with erythema on the
anterior surface of his leg extending over to his ankle, acute anterior compartment syndrome
was suspected.  On September 29, 2006, Mr. Raplee was discharged home to follow up with
Dr. Law, his primary care physician and physical therapy.  He was discharged with pain
medication.

26.     On October 3, 2006, Mr. Raplee went to see Dr. Law for follow up.  Dr. Law
noted that he had a swollen left leg with foot drop.  He required an MRI to rule out
compartment syndrome vs. cellulitis.  This was performed on October 5, 2006 and showed
generalized edema seen within and anterior to the anterior compartment.

27.     Dr. Law spoke to a local general surgeon who reviewed the study and believed it to be anterior compartment syndrome, that there was a high probability of necrotic tissue in the anterior compartment, but it was too late for a fasciotomy to make any difference due to muscle death.

28.     On October 7, 2006, Mr. Raplee was admitted to Cayuga Medical Center for 23 hour observation. In his history and physical, Dr. Law notes that the doctors at NIH were concerned that something happened during positioning during Mr. Raplee's surgery, but did not think it was compartment syndrome.

29.     The history and physical notes that the left lower leg is mildly swollen and seems warmer than the other side. He no longer has raised red areas. He is unable to dorsiflex his left ankle, though he can wiggle his toes and is less tender over the anterior compartment. A nerve conduction study on October 11, 2006 demonstrated, *inter alia,* absence of left peroneal motor response. The impression was of an axonal polyneuropathy, likely with a superimposed peroneal neuropathy on the left side.

30.     Mr. Raplee continued with physical therapy for six months postoperatively, and was discharged from physical therapy in mid March 2007. He cannot dorsiflex post 90 degrees. He fatigues easily, and requires a brace.

## COUNT I
### (Medical Negligence)

31.    Plaintiff incorporates by reference and realleges as though fully set forth herein paragraphs 1 - 30.

32.    At all times relevant hereto defendant USA, through its agents, apparent agents, servants and/or employees owed a duty to Mr. Raplee to provide reasonably skillful and responsible surgical and anesthesia treatment/care which was within the accepted standards of medical practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the acts giving rise to this cause of action.

33.    The conduct of defendant USA's agents, apparent agents, servants and/or employees, deviated from the accepted standards of medical practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the acts giving rise to this cause of action; and was the proximate cause of the injuries suffered by the Plaintiff, Mr. Raplee.

34.    More specifically, but not by way of limitation, defendant USA, through its agents, apparent agents, servants, and/or employees, deviated from the accepted standard of medical surgical and anesthesia care by (a) negligently positioning the Plaintiff during surgery; (b) failing to reposition the Plaintiff or ensure that the Plaintiff was appropriately repositioned during surgery at appropriate intervals when the said surgery ran longer than was originally anticipated; (c) by failing to act through its agents, apparent agents, servants

and/or employees in appropriate ways necessary to avoid permanent nerve injury; (d) by failing to follow the applicable standards of care in various other ways; (e) by failing to act in such a way as to prevent further injury to Mr. Raplee after the surgery; (f) failed to timely perform and/or obtain an appropriate surgical consultation, timely diagnose and appropriately treat Mr. Raplee's condition or failed to make a timely transfer of Mr. Raplee to a facility appropriately equipped to diagnose and treat his condition, which appeared to be compartment syndrome; (g) was negligent in its hiring and/or supervision of its agents, apparent agents, servants and/or employees.

35.     Under the Federal Tort Claims Act, defendant United States of America is liable for the above described actions of the agents, servants, and/or employees of the National Institutes of Health as they were acting within the scope of their agency, apparent agency and/or employment for the United States of America.

36.     Plaintiff alleges that defendant USA was also negligent and breached the applicable standards of care when it failed to timely obtain an appropriate surgical consultation, timely diagnose and treat Mr. Raplee's condition or failed to timely transfer Mr. Raplee to a facility appropriately equipped to diagnose and treat his condition, which appeared to be compartment syndrome.

## **DAMAGES**

37.     As a direct and proximate result of the aforementioned negligence of defendant USA through its agents, apparent agents, servants and employees during Mr. Raplee's

surgery and post-surgical hospitalization from September 18, 2006 to September 29, 2006, Mr. Raplee developed rhabdomyolysis from untreated or inadequately treated increased pressure and fluid accumulation in the compartment interfering with normal function of muscles and nerves of the lower left extremity and resulting in permanent nerve and muscle damage to the lower left extremity.

28.    As a direct and proximate result of the aforementioned negligence of defendant USA through its agents, apparent agents, servants and/or employees, Mr. Raplee developed a permanent injury to his peroneal nerve on the left and a permanent foot drop; severe and permanent damage to the nerves and muscles of his left lower extremity; atrophy of the lower leg; daily and constant severe pain requiring prescription medication, ice therapy and elevation for control; use of a brace to enable the patient to walk; pain in the lower back and spine as well as increased wear and tear on the spine and hip and knee joints of both lower extremities; decreased stamina; weight gain and inability to focus on tasks due to his requirement for pain medications for pain control. As a result of his dependence on powerful pain medication, Plaintiff has been and is unable to and will in the future be unable to maintain gainful employment and has thereby suffered damage to his earnings capacity.

39.    As a direct and proximate result of the aforementioned negligence of defendant USA through its agents, apparent agents, servants and/or employees, Mr. Raplee will also need for the rest of his life medical care for his current condition and the worsening condition of his lower extremities and spine as he continues to stress his body with walking with a

paralyzed lower left extremity. He will for the rest of his life require pain medications, pain management, physical therapy, may progress to needing amputation and other orthopaedic surgeries, and related medical rehabilitation. He will in the future incur costs and expenses related to medical and rehabilitative care, medical devices and supplies to help him cope with his permanent neurologic injury, household chores and activities of daily living, and other related costs and expenses, and he has incurred and will continue to incur pain, suffering, loss of enjoyment of life, lost wages and past and future medical costs and expenses.

40.    Defendant the United States of America is responsible for all acts and omissions of the National Institutes of Health and its agents, apparent agents, servants and/or employees under the Federal Tort Claims Act (28 U.S.C. §2671, *et seq.)*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Raplee, Jr. demands from defendant United States of America, judgment for damages in a fair and just amount which exceed the minimum jurisdictional amount, plus attorneys' fees and costs, and such further and additional relief as the nature of this case may require, and which this Honorable Court deems just and proper.

Respectfully submitted,

ASHCRAFT & GEREL, LLP

By: _____
L. Palmer Foret #00834
1300 Rockville Pike
Suite 1002
Rockville, MD 20815
(301) 770-3737
(301) 881-6132: Fax
lpforet@ashcraftlaw.com
*Attorney for Plaintiff*